# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

08CR 669

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) Criminal No. |
| | ) |
| | ) |
| 1) CHRISTOPHER P. WEST, | ) Count One: 18 U.S.C. § 371 |
| | ) (Conspiracy) |
| 2) PATRICK W. BOYD, | ) Count Two: 18 U.S.C. § 201(b)(2) |
| | ) (Bribery) |
| 3) ASSAD JOHN RAMIN, | ) |
| (A.K.A. ASSADULLAH RAMIN) | ) Count Three: 18 U.S.C. § 201(b)(1) |
| | ) (Bribery) |
| 4) TAHIR RAMIN, | ) |
| | ) Count Four: 18 U.S.C. 371 |
| 5) NOOR ALAM, | ) (Conspiracy) |
| (A.K.A. NOOR ALAM NOORI) | ) |
| | ) Count Five: 18 U.S.C. § 201(b)(2) |
| 6) NORTHERN RECONSTRUCTION | ) (Bribery) |
| ORGANIZATION, | ) |
| | ) Count Six: 18 U.S.C. § 201(b)(1) |
| 7) ABDUL QUDOOS BAKHSHI, | ) (Bribery) |
| (A.K.A. HAJI ABDUL QUDOOS) | ) |
| | ) Count Seven: 18 U.S.C. § 371 |
| 8) NAWEED BAKHSHI COMPANY, | ) (Conspiracy) |
| | ) |
| Defendants. | ) Count Eight: 18 U.S.C. § 201(b)(2) |
| | ) (Bribery) |
| | ) |
| | ) Count Nine: 18 U.S.C. § 201(b)(1) |
| | ) (Bribery) |
| | ) |

JUDGE DER-YEGHIAYAN

MAGISTRATE JUDGE ASHMAN

FILED
8-21-08
AUG 21 2008   TC
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## INDICTMENT

The SPECIAL FEBRUARY 2008- 2 Grand Jury charges that:

## BACKGROUND

1.      For the purposes of this Indictment, the "relevant period" is that period from in or

about September 2004 until at least in or about June 2005.  During the relevant period, the

United States Department of Defense ("DOD") operated a military base at Bagram Airfield

("BAF"), Afghanistan.  In support of Operation Enduring Freedom, the DOD contracted with

private companies for supplies and services.  Defendant CHRISTOPHER P. WEST ("WEST"),

an Army Major with the Illinois National Guard 33rd Area Support Group ("ASG"), was

deployed to BAF on or around March 29, 2004, and assigned as the "S4," or head of Base

Operations, where he served until in or around March 2005.  WEST worked at Base Operations

with an Assistant S4, Person A, a fellow member of the Illinois National Guard 33rd ASG.

2.      As the S4, WEST received requests for acquisition from different military

components at BAF and sought approval for those requests.  Among other things, WEST worked

on the acquisition of bunkers and barriers and asphalt paving services at BAF.  Bunkers and

barriers are cement structures used for force protection and perimeter walls at BAF.

3.      If the S4's request was approved and funding appropriated, a contract was

assigned to a Contracting Officer working in the Base Contracting office in order to procure the

good or service by competitive bid.  Defendant PATRICK W. BOYD ("BOYD"), an Air Force

Master Sergeant with the 496th Air Base Squadron, was deployed as a Contracting Officer to

BAF from on or about September 20, 2004, until on or about January 23, 2005.  Among other

things, BOYD awarded contracts for bunkers and barriers and asphalt paving services at BAF.

4.      Defendants ASSAD JOHN RAMIN ("JOHN RAMIN") and TAHIR RAMIN

("TAHIR RAMIN") own and operate military contracting businesses, including Contractor One

and the sham contracting business Contractor Two, that supply BAF with, among other things,

bunkers and barriers.

-2-

5.      Defendant NOOR ALAM ("ALAM") owns and operates the defendant military contracting business NORTHERN RECONSTRUCTION ORGANIZATION ("NRO"). NRO contracts with the DOD, supplying BAF with, among other things, bunkers and barriers and asphalt paving services. ALAM used an interpreter, Person B, to assist him in NRO's business dealings with the DOD and its officers.

6.      Defendant ABDUL QUDOOS BAKHSHI ("QUDOOS") owns and operates the defendant military contracting business NAWEED BAKHSHI COMPANY ("NBC"). NBC contracts with the DOD, supplying BAF with, among other things, bunkers and barriers and asphalt paving services. QUDOOS used an interpreter, Person C, to assist him in NBC's business dealings with the DOD and its officers.

7.      Whenever this Indictment refers to any act, deed, or transaction of any company, it means that the company engaged in the act, deed, or transaction by or through its officers, directors, employees, agents or other representatives while they were actively engaged in the management, direction, control, or transaction of its business or affairs.

## COUNT ONE
### 18 U.S.C. § 371
### (Conspiracy)

Paragraphs 1 through 7 of this Indictment are incorporated by reference as if fully stated herein, and the following is further alleged:

8.      Beginning in or about September 2004 and continuing until in or about March 2005, in Afghanistan and elsewhere, defendants

### CHRISTOPHER P. WEST,
### PATRICK BOYD,

-3-

**ASSAD JOHN RAMIN,**
**TAHIR RAMIN,**

and others known and unknown to the grand jury did knowingly and unlawfully combine,

conspire, confederate, and agree to commit an offense against the United States, that is, (1) to

directly and indirectly, corruptly demand, seek, receive, accept, and agree to receive and accept

things of value, that is, among other things, cash, in return for being influenced in the

performance of official acts, and in return for being induced to do or omit to do acts in violation

of official duty, including the award of a DOD contract to Contractor Two, in violation of 18

U.S.C. § 201(b)(2)(A) and (C); and (2) to, directly and indirectly, corruptly give, offer, and

promise a thing of value, that is, among other things, cash, to a public official with intent to

influence official acts and to induce such public official to do or omit to do acts in violation of

lawful duty, including the award of a DOD contract to Contractor Two, in violation of 18 U.S.C.

§ 201(b)(1)(A) and (C).

9.    Various individuals not made defendants in this Indictment, participated as co-

conspirators in the offenses charged herein and performed acts and made statements in

furtherance thereof.

## THE CONSPIRACY AND ITS OBJECTS

10.    The charged conspiracy consisted of a continuing agreement, understanding, and

concert of action among the defendants and their co-conspirators, the substantial terms of which

were to award a DOD contract in return for money.

## MANNER AND MEANS OF THE CONSPIRACY

It was a part of the conspiracy that JOHN RAMIN, TAHIR RAMIN, WEST, BOYD, and

others, would, among other things, do the following:

  11.  Agree to pay WEST, BOYD, and Person A a designated amount of money in return for the award of a DOD bunkers and barriers supply contract to Contractor Two.

  12.  Provide confidential and procurement-sensitive pricing information to JOHN RAMIN and TAHIR RAMIN in advance of bidding.

  13.  Award a DOD bunkers and barriers contract to Contractor Two.

  14.  Invoice DOD for goods delivered and/or services provided pursuant to the bunkers and barriers contract awarded to Contractor Two, and receive payment from DOD based on these invoices.

  15.  Give money to WEST, BOYD, and Person A, who divided the money, in return for the award of the DOD bunkers and barriers contract to Contractor Two.

OVERT ACTS

  In furtherance of the conspiracy and in order to accomplish its objects, the following overt acts, among others, were committed by the defendants and others in Afghanistan and elsewhere:

  16.  In or about September 2004, JOHN RAMIN proposed to WEST that he would pay $30,000 if WEST could procure a bunkers and barriers contract in the name of Contractor Two, a sham company controlled by JOHN RAMIN and TAHIR RAMIN.

  17.  In or about September and October 2004, WEST recruited BOYD to help effect the award of contracts to designated contractors, paid BOYD $5,000 in cash to solidify their agreement, and instructed Person A to pay BOYD an additional $10,000.

  18.  On or about October 21, 2004, BOYD awarded DOD bunkers and barriers

-5-

contract #W913TY-05-D-0001 to Contractor Two, with a maximum order amount of $1,000,000

and a minimum of $100,000.

19.    In or about October 2004, JOHN RAMIN gave WEST $30,000 cash in return for

the award of contract #W913TY-05-D-0001 to Contractor Two.

20.    In or about October 2004, WEST, BOYD, and Person A divided the $30,000.

21.    On or about January 27, 2005, WEST certified that Contractor Two delivered

and/or installed 400 six-foot barriers and 50 four-foot barriers, pursuant to Delivery Order #0001,

valued at $160,250.

22.    On or about February 16, 2005, Contractor Two was paid $160,250 in cash as

partial payment on contract #W913TY-05-D-0001.

23.    On or about February 28, 2005, WEST certified that Contractor Two delivered

and/or installed 245 bunkers, 150 six-foot barriers, and 325 four-foot barriers, pursuant to

Delivery Order #0001, valued at $198,825.

24.    On or about February 28, 2005, Contractor Two was paid $198,825 in cash as

partial payment on contract #W913TY-05-D-0001.

25.    On or about March 1, 2005, WEST submitted a Request for Additional Funding

of $22,000 for Contractor Two's contract #W913TY-05-D-0001.

**(All in violation of Title 18, United States Code, Section 371, and pursuant to the
extraterritorial venue provision, Title 18, United States Code, Section 3238.)**

### COUNT TWO
**18 U.S.C. § 201(b)(2)(A) and (C)**
**(Bribery)**

Paragraphs 1 through 25 of this Indictment are incorporated by reference as if fully stated

-6-

herein, and the following is further alleged:

26.    Beginning at least in or about September 2004 and continuing through at least in or about November 2004, in Afghanistan and elsewhere, defendants

### CHRISTOPHER P. WEST and
### PATRICK BOYD

as public officials, directly and indirectly did corruptly demand, seek, receive, accept, and agree to receive and accept things of value in return for being influenced in the performance of official acts, and in return for being induced to do and omit to do acts in violation of a lawful duty; that is, WEST and BOYD corruptly demanded, sought, received, accepted, and agreed to receive and accept approximately $30,000 cash from JOHN RAMIN and TAHIR RAMIN in return for awarding DOD contract #W913TY-05-D-0001 to Contractor Two.

**(All in violation of Title 18, United States Code, Section 201(b)(2)(A) and (C), and pursuant to the extraterritorial venue provision, Title 18, United States Code, Section 3238.)**

### COUNT THREE
### 18 U.S.C. § 201(b)(1)(A) and (C)
### (Bribery)

Paragraphs 1 through 26 of this Indictment are incorporated by reference as if fully stated herein, and the following is further alleged:

27.    Beginning at least in or about September 2004 and continuing through at least in or about November 2004, in Afghanistan and elsewhere, defendants

### ASSAD JOHN RAMIN and
### TAHIR RAMIN

directly and indirectly, did corruptly give, offer, and promise something of value to a public official, with intent to influence official acts and to induce such public official to do and omit to

do acts in violation of the lawful duty of such official; that is, JOHN RAMIN and TAHIR

RAMIN corruptly gave, offered, and promised approximately $30,000 cash to WEST, BOYD,

and Person A in return for the award of DOD contract #W913TY-05-D-0001 to Contractor Two.

**(All in violation of Title 18, United States Code, Section 201(b)(1)(A) and (C), and pursuant**
**to the extraterritorial venue provision, Title 18, United States Code, Section 3238.)**

## COUNT FOUR
### 18 U.S.C. § 371
### (Conspiracy)

Paragraphs 1 through 7 of this Indictment are incorporated by reference as if fully stated

herein, and the following is further alleged:

28.    Beginning in or about September 2004 and continuing until in or about December

2004, in Afghanistan and elsewhere, defendants

### CHRISTOPHER P. WEST,
### PATRICK BOYD,
### NORTHERN RECONSTRUCTION ORGANIZATION,
### NOOR ALAM,

and others known and unknown to the grand jury did knowingly and unlawfully combine,

conspire, confederate, and agree to commit an offense against the United States, that is, (1) to

directly and indirectly, corruptly demand, seek, receive, accept, and agree to receive and accept

things of value, that is, among other things, cash, in return for being influenced in the

performance of official acts, and in return for being induced to do or omit to do acts in violation

of official duty, including the award of a DOD contract to NRO, in violation of 18 U.S.C.

§ 201(b)(2)(A) and (C); and (2) to, directly and indirectly, corruptly give, offer, and promise a

thing of value, that is, among other things, cash, to a public official with intent to influence

official acts and to induce such public official to do or omit to do acts in violation of lawful duty, including the award of a DOD contract to NRO, in violation of 18 U.S.C. § 201(b)(1)(A) and (C).

29.    Various individuals not made defendants in this Indictment, participated as co-conspirators in the offenses charged herein and performed acts and made statements in furtherance thereof.

### THE CONSPIRACY AND ITS OBJECTS

30.    The charged conspiracy consisted of a continuing agreement, understanding, and concert of action among the defendants and their co-conspirators, the substantial terms of which were to award a DOD contract in return for money.

### MANNER AND MEANS OF THE CONSPIRACY

It was a part of the conspiracy that NRO, ALAM, WEST, BOYD, and others, would, among other things, do the following:

31.    Agree to pay WEST, BOYD, and Person A a designated amount of money in return for the award of a DOD asphalt paving contract to NRO.

32.    Provide confidential and procurement-sensitive pricing information to ALAM and/or ALAM's interpreter, Person B, in advance of bidding.

33.    Award DOD asphalt paving contract to NRO.

34.    Invoice DOD for goods delivered and/or services provided pursuant to the asphalt paving contract awarded to NRO, and receive payment from DOD based on these invoices.

35.    Give money and other things of value to WEST, BOYD, and Person A, who divided the money equally, in return for the award of the DOD asphalt paving contract to NRO.

OVERT ACTS

In furtherance of the conspiracy and in order to accomplish its objects, the following overt acts, among others, were committed by the defendants and others in Afghanistan and elsewhere:

36.    In or about September and October 2004, WEST recruited BOYD to help effect the award of contracts to designated contractors, paid BOYD $5,000 in cash to solidify their agreement, and instructed Person A to pay BOYD an additional $10,000.

37.    In or about October 2004, WEST agreed with ALAM to award a contract for asphalt paving services at BAF to NRO in return for $30,000.

38.    In or about October 2004, WEST instructed BOYD to award a contract for asphalt paving services at BAF to the designated contractor NRO.

39.    In or about October 2004, Person B, ALAM's interpreter, delivered on ALAM's behalf $30,000 cash to Person A in return for the award of the DOD asphalt paving contract to NRO.

40.    In or about October 2004, WEST, BOYD, and Person A split the $30,000.

41.    On or about December 27, 2004, NRO was paid $480,521 in cash as partial payment on asphalt paving contract #W913TY-04-C-0210.

**(All in violation of Title 18, United States Code, Section 371, and pursuant to the
extraterritorial venue provision, Title 18, United States Code, Section 3238.)**

**COUNT FIVE**
**18 U.S.C. § 201(b)(2)(A) and (C)**
**(Bribery)**

Paragraphs 1 through 7 and paragraphs 28 through 41 of this Indictment are incorporated

-10-

by reference as if fully stated herein, and the following is further alleged:

42.    Beginning at least in or about September 2004 and continuing through at least in

or about November 2004, in Afghanistan and elsewhere, defendants

### CHRISTOPHER P. WEST and
### PATRICK BOYD

as public officials, directly and indirectly did corruptly demand, seek, receive, accept, and agree

to receive and accept things of value in return for being influenced in the performance of official

acts, and in return for being induced to do and omit to do acts in violation of a lawful duty; that

is, WEST and BOYD corruptly demanded, sought, received, accepted, and agreed to receive and

accept approximately $30,000 cash from NRO and ALAM in return for awarding a DOD asphalt

paving contract to NRO.

**(All in violation of Title 18, United States Code, Section 201(b)(2)(A) and (C), and pursuant
to the extraterritorial venue provision, Title 18, United States Code, Section 3238.)**

### COUNT SIX
### 18 U.S.C. § 201(b)(1)(A) and (C)
### (Bribery)

Paragraphs 1 through 7 and paragraphs 28 through 42 of this Indictment are incorporated

by reference as if fully stated herein, and the following is further alleged:

43.    Beginning at least in or about September 2004 and continuing through at least in

or about November 2004, in Afghanistan and elsewhere, defendants

### NORTHERN RECONSTRUCTION ORGANIZATION and
### NOOR ALAM

directly and indirectly, did corruptly give, offer, and promise something of value to a public

official, with intent to influence an official act and to induce such public official to do and omit

-11-

to do acts in violation of the lawful duty of such official; that is, NRO and ALAM corruptly gave, offered, and promised approximately $30,000 cash to WEST, BOYD, and Person A in return for the award of a DOD asphalt paving contract to NRO.

**(All in violation of Title 18, United States Code, Section 201(b)(1)(A) and (C), and pursuant to the extraterritorial venue provision, Title 18, United States Code, Section 3238.)**

**<u>COUNT SEVEN</u>**
**18 U.S.C. § 371**
**(Conspiracy)**

Paragraphs 1 through 7 of this Indictment are incorporated by reference as if fully stated herein, and the following is further alleged:

44.    Beginning in or about September 2004 and continuing until in or about June 2005, in Afghanistan and elsewhere, defendants

**CHRISTOPHER P. WEST**,
**PATRICK BOYD,**
**NAWEED BAKHSHI COMPANY,**
**ABDUL QUDOOS BAKHSHI,**

and others known and unknown to the grand jury did knowingly and unlawfully combine, conspire, confederate, and agree to commit an offense against the United States, that is, (1) to directly and indirectly, corruptly demand, seek, receive, accept, and agree to receive and accept things of value, that is, among other things, cash, in return for being influenced in the performance of official acts, and in return for being induced to do or omit to do acts in violation of official duty, including the award of a DOD contract to NBC, in violation of 18 U.S.C. § 201(b)(2)(A) and (C); and (2) to, directly and indirectly, corruptly give, offer, and promise a thing of value, that is, among other things, cash, to a public official with intent to influence

-12-

official acts and to induce such public official to do or omit to do acts in violation of lawful duty, including the award of a DOD contract to NBC, in violation of 18 U.S.C. § 201(b)(1)(A) and (C).

45.    Various individuals not made defendants in this Indictment, participated as co-conspirators in the offenses charged herein and performed acts and made statements in furtherance thereof.

### THE CONSPIRACY AND ITS OBJECTS

46.    The charged conspiracy consisted of a continuing agreement, understanding, and concert of action among the defendants and their co-conspirators, the substantial terms of which were to award a DOD contract in return for money.

### MANNER AND MEANS OF THE CONSPIRACY

It was a part of the conspiracy that NBC, QUDOOS, WEST, BOYD, and others, would, among other things, do the following:

47.    Agree to pay WEST, BOYD, and Person A a designated amount of money in return for the award of a DOD asphalt paving contract to NBC.

48.    Provide confidential and procurement-sensitive pricing information to QUDOOS and/or QUDOOS's interpreter, Person C, in advance of bidding.

49.    Award a DOD asphalt paving contract to NBC.

50.    Invoice DOD for goods delivered and/or services provided pursuant to the asphalt paving contract awarded to NBC, and receive payment from DOD based on these invoices.

51.    Give money and other things of value to WEST, BOYD, and Person A, who divided the money, in return for their the award of the DOD asphalt paving contract to NBC.

<u>OVERT ACTS</u>

In furtherance of the conspiracy and in order to accomplish its objects, the following overt acts, among others, were committed by the defendants and others in Afghanistan and elsewhere:

52.     In or about September and October 2004, WEST recruited BOYD to help effect the award of contracts to designated contractors, paid BOYD $5,000 in cash to solidify their agreement, and instructed Person A to pay BOYD an additional $10,000.

53.     In or about October 2004, WEST agreed with QUDOOS to award a contract for asphalt paving services at BAF to NBC in return for $30,000.

54.     In or about October 2004, WEST instructed BOYD to award a contract for asphalt paving services at BAF to the designated contractor NBC.

55.     On or about October 23, 2004, BOYD awarded DOD asphalt paving contract #W913TY-05-D-0005 to NBC.

56.     In or about October 2004, QUDOOS delivered $30,000 cash to Person A in return for the award of DOD contract #W913TY-05-D-0005 to NBC.

57.     In or about October 2004, WEST, BOYD, and Person A divided the $30,000.

58.     On or about November 20, 2004, NBC was paid $275,503.50 in cash as partial payment on contract #W913TY-05-D-0005.

59.     On or about December 16, 2004, NBC was paid $68,730 in cash as partial payment on contract #W913TY-05-D-0005.

60.     On or about June 4, 2005, NBC was paid $45,480 by United States Treasury check as partial payment on contract #W913TY-05-D-0005.

-14-

**(All in violation of Title 18, United States Code, Section 371, and pursuant to the
extraterritorial venue provision, Title 18, United States Code, Section 3238.)**

## COUNT EIGHT
### 18 U.S.C. § 201(b)(2)(A) and (C)
### (Bribery)

Paragraphs 1 through 7 and paragraphs 44 through 60 of this Indictment are incorporated

by reference as if fully stated herein, and the following is further alleged:

61.    Beginning at least in or about September 2004 and continuing through at least in

or about November 2004, in Afghanistan and elsewhere, defendants

### CHRISTOPHER P. WEST and
### PATRICK BOYD

as public officials, directly and indirectly did corruptly demand, seek, receive, accept, and agree

to receive and accept things of value in return for being influenced in the performance of official

acts, and in return for being induced to do and omit to do acts in violation of a lawful duty; that

is, WEST and BOYD corruptly demanded, sought, received, accepted, and agreed to receive and

accept approximately $30,000 cash from NBC and QUDOOS in return for awarding DOD

contract #W913TY-05-D-0005 to NBC.

**(All in violation of Title 18, United States Code, Section 201(b)(2)(A) and (C), and pursuant
to the extraterritorial venue provision, Title 18, United States Code, Section 3238.)**

## COUNT NINE
### 18 U.S.C. § 201(b)(1)(A) and (B)
### (Bribery)

Paragraphs 1 through 7 and paragraphs 44 through 61 of this Indictment are incorporated

by reference as if fully stated herein, and the following is further alleged:

62.    Beginning at least in or about September 2004 and continuing through at least in or about November 2004, in Afghanistan and elsewhere, defendants

**NAWEED BAKHSHI COMPANY and**
**ABDUL QUDOOS BAKHSHI**

directly and indirectly, did corruptly give, offer, and promise something of value to a public official, with intent to influence an official act and to induce such public official to do and omit to do acts in violation of the lawful duty of such official; that is, NBC and QUDOOS corruptly gave, offered and promised approximately $30,000 cash to WEST, BOYD, and Person A in return for the award of contract #W913TY-05-D-0005 to NBC.

**(All in violation of Title 18, United States Code, Section 201(b)(1)(A) and (B), and pursuant to the extraterritorial venue provision, Title 18, United States Code, Section 3238.)**

DATED: Aug 21. 2008

THOMAS O. BARNETT
Assistant Attorney General
Antitrust Division
United States Department of Justice

SCOTT D. HAMMOND
Deputy Assistant Attorney General
Antitrust Division
United States Department of Justice

MARC SIEGEL
Director of Criminal Enforcement
Antitrust Division
United States Department of Justice

LISA M. PHELAN
Chief, National Criminal Enforcement Section
Antitrust Division
United States Department of Justice

MARK W. PLETCHER
EMILY W. ALLEN
MARK C. GRUNDVIG
CARSTEN REICHEL
Trial Attorneys
Antitrust Division
United States Department of Justice

-17-